Arthur Snyder, Mrs. William McIvor, Mrs. August Johnson, Neal Hoffman and Morris Wax, et al.,

*Appellants*

(Petitioners below)

vs.

The City of Cheyenne, a Municipal Corporation; Worth Story, as Mayor of said City; Herbert Kingham and Walter (Buzz) Bradley, as City Commissioners of said City of Cheyenne, Wyoming; and Vivian F. Rodin as City Clerk of said City,

*Appellees*

(Respondents below)

(No. 2896; February 3, 1959; 334 Pac. (2d) 750)

406

For the appellants the cause was submitted upon the brief of Carroll and Cole and Charles E. Lane of Cheyenne, Wyoming, and oral argument by Thomas J. Carroll.

For the appellees the cause was submitted upon the brief and also oral argument of Philip White and A. G. McClintock of Cheyenne, Wyoming.

Heard before Blume, C. J., and Parker and Harnsberger, JJ.

## OPINION

Mr. Chief Justice Blume delivered the opinion of the court.

This is an action brought by citizens and taxpayers of Cheyenne, Wyoming, to test the validity of an ordinance of the City of Cheyenne adopted June 9, 1958, under which and pursuant to a vote of the people the city proposes to issue revenue bonds in the amount of $250,000 for the purpose of extending the sewerage system of the city in the north and east part thereof. The trial court declared the ordinance valid and plaintiffs have appealed to this court from the decision of that court.

To understand the situation herein fully, it should be mentioned that the City of Cheyenne on March 14, 1949, adopted Ordinance 857 to issue revenue bonds for a sewage disposal system in the amount of $1,100,-000. The electors of the city approved. The bonds

were actually issued pursuant to Ordinance 927 adopted November 20, 1950, and are actually outstanding at this time except that already bonds in the sum of $360,000 have been redeemed. Thereafter the City of Cheyenne levied service charges for the use of the presently existing sewerage system to be used for the payment of the cost of construction of the sewage disposal plant and cost of operating and maintaining it.

According to the prospectus in the record before us, the purpose of the bond issue of $250,000 above mentioned is to provide the people of Cheyenne with an intercepter or trunk sewer line to collect sewage from lateral sewer lines and deliver it to the present sewage disposal or treatment plant located on the bank of Crow Creek east of the city limits of Cheyenne. The proposed present sewer line is expected to collect sewage from some nine additions to the City of Cheyenne in which there are about 300 homes or about 1,000 people, these homes having no sewer system other than septic tanks. In addition thereto, the trunk or intercepter line is expected to serve a total area of about 4,500 acres on which there are about 700 dwelling units. Plans and specifications were prepared by the City Engineer of the City of Cheyenne and were on file in the city offices from and after December 1, 1957, and have been continuously open for inspection since that time.

On June 9, 1958, the Council of the City of Cheyenne adopted Ordinance 1220 which provides in part as follows:

"ENTITLED: AN ORDINANCE PROVIDING FOR THE SUBMISSION TO A VOTE OF THE PEOPLE OF THE CITY OF CHEYENNE, WYOMING, THE QUESTION OF ISSUING BONDS OF

THE CITY PAYABLE SOLELY OUT OF THE REVENUES TO BE DERIVED FROM THE OPERATION OF THE SEWERAGE SYSTEM OF SAID CITY, FOR THE PURPOSE OF EXTENDING SAID SEWERAGE SYSTEM, AND DECLARING AN EMERGENCY.

"WHEREAS, the City Council of the City of Cheyenne, Wyoming, deems it necessary and advisable to extend the sewerage system of said City and, subject to a vote of the people of said City, to issue bonds payable solely out of the revenues to be derived from the operation of the sewerage system of said City, as extended, as provided by the Laws of Wyoming and particularly Chapter 29, Article 27, Wyoming Compiled Statutes, 1945, as amended; and

"WHEREAS, plans and specifications for such project have been adopted and are on file in the office of the Clerk of said City where the same may be inspected by the public; and

"WHEREAS, the estimated cost of constructing such project and paying the costs and expenses incident thereto is $330,000.00, of which sum approximately $80,000.00 will be paid by the Federal Government; and

"WHEREAS, the City Council has determined that the period of usefulness of said project is at least forty years; and

"WHEREAS, the amount of revenue bonds proposed to be issued is $250,000, consisting of 250 bonds in the denomination of $1,000 each, bearing interest at a rate or rates

not exceeding 4% per annum, payable semi-annually, such bonds maturing as follows:

| Amount | Maturity |
|--------|----------|
| $10,000 | 1960 to 1964, incl. |
| 15,000 | 1965 and 1966 |
| 10,000 | 1967 to 1974, incl. |
| 45,000 | 1975 and 1976 |

Said bonds shall be redeemable at the option of the City in such amounts and at such time, with or without premium, as shall later be determined by Ordinance; and

"WHEREAS, said bonds shall be paid, principal and interest, solely out of the revenues to be derived from operating the sewerage system of said City, as extended, which revenues are hereby pledged for the purpose of paying the cost of operating and maintaining said extended system, providing an adequate depreciation fund and paying the principal of and interest on such revenue bonds; and

"WHEREAS, it is proposed that the City shall charge and collect from the users of said sewerage system as extended, service rates which shall be sufficient to make the payments in the last preceding paragraph specified; and

"WHEREAS, if the people of said City approve the issuance of said bonds, the City Council will adopt a supplemental ordinance containing such provisions as are required or permitted by the law under which such bonds shall be issued;"

The ordinance provided for a special election to be held on Tuesday, July 8, 1958. The election was prop-

erly held and was approved by the qualified electors of the city by a vote of 2,580 in favor of the proposition as against 1,144 electors against it. And thereupon the mayor and council of the city proposed to issue the bonds so authorized by the electors. To prevent that, the present action was commenced.

It is freely admitted by counsel for the appellants herein that the City of Cheyenne has the right to issue revenue bonds as proposed at the present time in order to extend its sewerage system. The right to issue such bonds was fully discussed and upheld in the case of Laverents v. City of Cheyenne, 67 Wyo. 187, 217 P. 2d 877. Counsel for appellants assail the validity of the ordinance here in question only on certain and specific grounds which we shall proceed to discuss.

1. Counsel for appellants contend that the ordinance is invalid because it did not specifically state that the amount of money to be derived from the bonds should be devoted to the proposed extension of the sewerage system and that, accordingly, the city could divert the money derived from the sale of the bonds to a different object. We can see no merit in that contention. The ordinance states that the bonds are to be issued for the purpose of extending the sewerage system. That at least implies that the proceeds are to be devoted to that end. The contention is overruled.

2. Section 29-2703, W.C.S. 1945 (1957 Cum. Pocket Supp.), states that when a municipality seeks to construct or extend a sewerage system the governing body of the city

"* * * shall adopt an ordinance describing, in a general way, the contemplated project and refer to plans

and specifications thereof, which plans and specifications shall be open for the inspection of the public. Such ordinance shall set out the estimated cost of the project, determine the period of usefulness thereof and fix the amount of revenue bonds proposed to be issued, the maturity or maturities, the interest rate which shall not exceed six (6) per centum per annum, and all the details in connection with such bonds.* * *"

It is contended by appellants that Ordinance 1220 is invalid because it does not describe the project in a general way as mentioned in the foregoing statute and particularly because it does not mention the fact that part of the project would extend beyond the corporate limits of the City of Cheyenne. Since the project is but an extension of the sewerage system, that fact itself would give some general information to the voters of what was intended to be done, since the people generally have some idea of what a sewerage system is. Moreover, it is common knowledge that a sewage disposal plant, that is to say, a sewage treatment plant, is ordinarily located outside of the limits of a city, if that is at all possible. In this case, the sewage treatment plant was, pursuant to Ordinance 857, located outside of the City of Cheyenne. The people of the city presumably had knowledge of this ordinance and they would naturally anticipate and expect that a sewer trunk line as contemplated in this case would be connected with this sewage treatment plant. In any event, the plans and specifications of the projected extension of the sewerage system were on file in the city offices and definitely show the character of the extension and the location thereof and show specifically that the end of the trunk line is at the sewage treatment plant. It was held in Chase v. Trout, 146 Cal. 350, 80 P. 81, 87, that the authorities were practically unanimous in establishing the rule that the reference to plans and specifications on file will serve to

make sufficient the description of the intended work. Many cases are cited. In the case of Baltis v. Village of Westchester, 3 Ill.2d 388, 121 N.E.2d 495, 507, in which it appears that the statute requires that the project should be described in a general way, the court said:

"* * * We believe that the statutory requirement as to description in a general way of the improvements or extensions to be made is complied with by the ordinance here in question, if the particular plans and specifications referred to in said ordinance as being on file in the office of the village clerk for public inspection are sufficiently definite to inform the voters of the nature and extent of the proposed improvements and sufficiently specific so that neither an inferior nor more costly improvement may be constructed than described."

In 63 C.J.S. Municipal Corporations § 1093c, p. 744, it is said that a description is sufficient if it is such as to give the property owner a general understanding of what is proposed to be done. We think the electors of Cheyenne had a general understanding of what was proposed to be done in the case at bar, aside from the extensive discussion and advertisement which seems to have taken place in connection with the project in this case. We think, accordingly, that Ordinance 1220 was sufficiently specific to enable the electors of the City of Cheyenne to intelligently vote on the proposition as to whether or not the proposed bonds should be approved, and the objection here discussed on the part of the appellants is overruled.

3. It may be noted that in Ordinance 1220 it is provided that the revenues derived from the operation of the whole sewerage system are pledged for the payment of the principal and interest of the bonds proposed to be issued. It is the contention of appellants

herein that if the revenues of the whole sewerage system are pledged instead of the revenues derived from the extension alone it becomes a general obligation of the city. That point was discussed at considerable length in the Laverents case, supra, in which it was pointed out that a few authorities sustain the contention of the appellants herein but that the weight of authority is to the contrary. Thus it was said in Stark v. City of Jamestown, 76 N.D. 422, 37 N.W.2d 516, 531, as follows:

"The weight of authority sustains the view that a city which owns and operates a utility does not create an indebtedness within the meaning of the constitutional debt limitation by pledging in payment of revenue bonds issued and sold to finance an extension or improvement of such utility plant, the revenue derived from the entire plant, and not merely from the addition or improvement.* * *"

We think the rule announced in this case is sound and we adopt it, and the contention of appellants herein in this connection must be and is overruled.

4. In the case at bar, as already stated, the whole of the revenues from the sewerage system of the City of Cheyenne is pledged to pay the principal and interest of the $250,000 bond issue. Part of these revenues, namely, that from the now existing sewerage system, has been pledged to pay the bond issue of $1,100,000 so that this part of the revenues has been pledged twice and for two different issues of bonds. This, however, is of no concern to the appellants herein and is only the concern of the holders of the prior bonds. Of course the city cannot, morally at least, do anything to diminish the security of the prior issue of bonds. It must make the $250,000 bond issue junior to the prior issue insofar as the revenues from the existing sewer-

age system are pledged to pay the bonds of the prior issue. There is no indication that the city will not do so in the ordinance yet to be passed. Section 12, Ordinance 927, relating to the issuance of the prior bonds, provides as follows:

"* * * Nothing contained herein shall prevent the issuance of bonds or obligations having a lien on the revenues of said system junior or subordinate to the lien of the bonds herein authorized."

Sections 29-2702 and 29-2703, W.C.S. 1945 (1957 Cum. Pocket Supp.), both contemplate that junior bonds may be issued. The latter section, relating to the ordinance for an extension of the sewerage system, provides:

"* * * Such ordinance may provide that the bonds, or such ones thereof as may be specified, shall, to the extent and in the manner prescribed, be subordinated and be junior in standing to such other bonds payable from the revenues of the sewerage system as are specified in such ordinance.* * *"

True, this was not so provided in Ordinance 1220 as the statute permitted it to be done, but we think that unimportant. The statutes of this state, we think, clearly contemplate that the provision of the statute may be carried out when the subsequent bonds are actually issued under an ordinance yet to be passed.

We might incidentally say in that connection that already $360,000 of the $1,100,000 bond issue has been retired, and the record before us clearly indicates that when the sewerage system has been extended as intended and proper service charges are imposed, there will be more than ample revenue to retire the bonds here in question as well as the previously issued bonds.

We hold that Ordinance 1220 is valid in every respect, and the bonds therein provided for may be duly issued as valid revenue bonds. The judgment of the trial court is affirmed.

Affirmed.